ROSA SKINNER,

*vs.*

LOUIS L. REDDING, Executor of the Will of AMELIA COOPER, EDWARD R. BELL, EVA BELL, and BLANCHE W. STUBBS and FREDERICK D. STUBBS, Administrators of the Estate of JENNETTE BACON STUBBS, deceased.

*New Castle, September 23, 1946.*

*David S. Keil* and *Samuel F. Keil*, of Keil & Keil, for complainant.

*Morris Cohen*, of Cohen & Cohen, for defendants.

SEITZ, Vice-Chancellor: This is a suit to remove a cloud allegedly existing on the complainant's title to certain real estate devised to complainant, but sold by the executor to pay debts.

One Amelia Cooper (hereinafter called "testatrix")

died October 10, 1942, leaving a will which in so far as pertinent provides as follows:

"Item 2. I give and devise unto Rosa Skinner, now residing at No. 402 Poplar Street, in Wilmington, Delaware, my brick house and the lot of land upon which it is erected, known as No. 934 Walnut Street, in Wilmington, Delaware. This gift is made as an expression of my appreciation for her kindness to me and for services entirely beyond anything for which she has been paid.

"Item 3. I give, bequeath and devise unto my son, James Cooper, of Wilmington, Delaware, all the rest, residue and remainder of my property, whether real or personal, or of whatever nature and wher-ever situate.

"Item 4. * * * I authorize and empower him [my executor] to sell, either at public or private sale and for such price or prices and upon such terms as he shall deem best, any or all of my property, if he should deem that necessary in order to pay my just debts. In the event that my Executor should sell any item of my property, such sale shall act as an abatement of gift with reference to the legatee or devisee for whom such item of property was hereinabove designated, except that any residue, or surplus, of proceeds from such sale after payment of debts, expenses, etc., shall be turned over by my Executor unto the person who, had there been no sale, would have received such item or property."

Except for the specific devise to the complainant, Rosa Skinner, of the property known as 934 Walnut Street, all the property of the testatrix passed under the quoted residuary clause (Item 3).

The executor, the defendant Louis L. Redding, entered upon his duties and some of his actions as such constitute the reason for this litigation.

It is undisputed that the entire estate of the deceased consisted of personal property worth $286.11, and three pieces of real estate known as 910, 918 and 934 Walnut Street. Against these assets there were debts due and owing in the sum of $2505.08.

Faced with this situation, the executor Redding was required to dispose of sufficient real estate to make up the deficiency in the amount of the personal property available to pay the debts.

After some negotiations, the executor Redding in February, 1943 sold to one Edward R. Bell for $2100 the property known as 934 Walnut Street—the property which had been specifically devised to the complainant. He left untouched the real estate which passed to James Cooper under the residuary clause. The sum received from the sale was in excess of the value of the property as appraised by persons appointed by the Register of Wills. Incidentally, at the time of the sale, the executor had not received the personal assets which ultimately amounted to $286.11.

Having received the $2100 for the sale of 934 Walnut Street (that this was its fair value appears to be conceded) the executor still had insufficient assets to pay the claims which had been filed with him aggregating $2505.08. Rather than sell the residuary realty the executor sought a way to cut down the debts.

One of the claims filed against the estate amounted to $1573.56, and represented the admittedly valid claim of the Old Age Welfare Commission for repayment of payments made to the testatrix during her lifetime.

It also appears that at the time in question, James Cooper, son of the testatrix, was approximately seventy years of age, was unemployed, and physically incapable of regular employment. The executor Redding testified that he desired, if possible, to save the two properties (910 and 918 Walnut Street) for James Cooper, and accordingly requested the Old Age Welfare Commission to accept 50% of its claim so that James Cooper could retain the two properties mentioned and could thereby be kept off the public relief rolls.

The claim was subsequently compromised for 50% or $786.78. This was done with the approval of the Commission. After the payment of the debts, and after the compromise was accepted and paid, which both the executor and the president of the Commission testified would not

have been offered or accepted except for the resulting benefit to James Cooper, the executor possessed $667.81. The two properties left to James Cooper also remained untouched.

Both sides introduced testimony as to the values of 910 and 918 Walnut Street in 1942 and 1943. The defendants' experts valued 910 Walnut Street in 1942 at the sum of $500. Only one of the defendants' experts testified as to the value of 918 Walnut Street, and she valued it at $500 in 1942. Complainant's appraisers placed a value of $800 on 910 Walnut Street in 1942 and $1000 on 918 Walnut Street in 1942 (the testimony of one of the appraisers is not clear).

Complainant contends that the executor was under a legal duty imposed by the terms of the will to dispose of the real estate passing under the residuary clause (910 and 918 Walnut Street) before disposing of the specifically devised property (934 Walnut Street) to pay the debts of the estate; that the executor did not do so and in fact has not done so up to this time, but on the contrary sold only the real estate specifically devised to the complainant. Consequently, the purported sale of 934 Walnut Street was a legal nullity and the deed of sale and the mortgage subsequently placed on the property should, in effect, be declared to be nullities.

The defendants contend (1) the will gave the executor the right to sell any of the real estate he saw fit to sell without regard to order; and (2) even if the will required the executor to sell the residuary real estate first, it appears under the facts most favorable to complainant that the executor would still have had to sell the property specifically devised to complainant in order to pay debts. Moreover, the Commission would not have compromised for the benefit of one other than James Cooper, so that if we assume that the residuary real estate was sold first (based on its assumed 1942 value) and then the specifically devised real estate, it appears that the complainant would have been entitled to receive the sum of $667.81 plus (possibly) the sum

of $213.22, the aggregate figure being based on a valuation of the residuary real estate by expert witnesses at $1000 as of 1942. Under these facts, defendants contend, a court of equity should not undo the transaction, but should, in effect, consider the transaction as having been legally conducted and should find the 1942 value of the residuary real estate and should award complainant damages based on such assumed value.

Turning to the first point for decision, it is apparent that the parties have squared away on the issue of whether or not the will, properly interpreted, authorized the executor, if he saw fit in order to pay debts, to dispose of the specifically devised real estate prior to disposing of the residuary real estate. However, this phase of the case possesses some unusual features requiring consideration. In 1945 a civil action was filed in the Superior Court of this county entitled *State, for Use of Skinner, v. Redding, et al.*, 4 *Terry* (43 *Del.*) 201, 45 *A.2d* 507, 509, wherein, for our purposes, the parties can be said to be the same as here. Actually, the case involved an action of debt against the executor Redding and his surety. The theory of plaintiff's case (complainant herein) apparently was that the executor committed a tort by an "allegedly unlawful sale of the specifically devised property prior to the sale of real estate not specifically devised." The case arose on the defendant's demurrer to the declaration, and Judge Rodney sustained the demurrer stating that complainant sought to "sustain damages for what may be termed the placing of an allegedly ineffective cloud upon the title of the plaintiff to the property." This, the learned Judge held, he could not do.

The plaintiff in the law action (complainant herein) apparently agreed with the conclusion of Judge Rodney because he took the hint contained in the opinion that his remedy, if any, must be provided by a court of equity.

However, and of real importance here, is the fact that the question of interpretation of the will raised before me

was also raised before Judge Rodney and he disposed of it as follows:

"The executor places reliance upon the terms of the will that the executor was empowered to sell 'any or all of my property' for the payment of debts, and in case of such sale the executor draws particular attention to the language of Item 4, as set out in the statement of facts.

"From this the defendant reasons that as executor he had both power and right to sell the specifically devised property before subjecting the residuary estate to the payment of debts. * * *

"I think the executor under the terms of the will had no authority to exercise his own volition and to change the order of liability of real estate for the payment of debts, and effectually defeat the specific devise and leave the residuary devise intact. It is difficult to see that the executor in this case would operate under a rule different from that which would have been adopted by the Orphans' Court in case the will of Amelia Cooper had not contained an express power of sale in the executor, for the payment of debts. The posing of one question would seem determinative of his power. Suppose the executor had entered into a written contract of sale of the specifically devised property, prior to the sale of the residuary property, and had refused to perform his contract. Could the vendee by specific performance in the court of equity have compelled the conveyance? The answer, I think, is that such conveyance would not have been ordered. It is apparent that I am passing upon no situation where the specific devisee had ratified or confirmed an unauthorized sale, and merely sought to recover the purchase price obtained by the executor. No such question is here presented."

The quoted language indicates that the law court rejected the interpretation of the will contended for by the defendants herein, namely, that the will authorized the executor in order to pay debts to sell the specifically devised realty before selling what I may call the residuary realty. Defendants contend that the quoted language of the court is a dictum, and in any event is an erroneous interpretation of the will.

The conclusion reached by Judge Rodney with respect to the proper interpretation of the power of the executor cannot be said to be unwarranted. Defendants' argument that the existence of the abatement clause, plus the rela-

tionship existing between the executor and the residuary devisee, shows an intent to vary the rule of construction that residuary real estate is to be sold to pay debts before specifically devised real estate, cannot in my opinion be accepted. This is so because the abatement clause is not such "a clear expression" contrary to the usual rule of interpretation otherwise applicable to warrant a different result. *In re Sutton's Estate,* 11 *Del.Ch.* 460, 97 *A.* 624. While I recognize the harsh results which may accompany the application of the principle of construction which requires the sale of residuary property first to pay debts (here it gives preference to a stranger over a blood relation of the testatrix) and while I might be inclined to give more consideration to the effect, if any, of the abatement clause on the proper interpretation of the residuary clause, nevertheless, I do not believe this court should refuse to follow the conclusion of the Superior Court in such a situation, especially where the ruling of the Superior Court is amply supported by authority.

I conclude that the will imposed the legal duty upon the executor to sell all the residuary real estate to pay debts before resorting to the sale of the specifically devised realty for that purpose.

The second point raised by the defendants requires the most serious consideration. It may be stated thus: If the executor had sold the residuary realty first he would still have been obligated to sell the property specifically devised to complainant because—even accepting complainant's testimony as to the value of the residuary realty in 1942—the personal property and the price received from the sale of the residuary realty would have been insufficient to pay the claims against the estate. This being true, the defendants contend that this court should treat the case as though the residuary property had actually been sold by the executor for $1000 (complainant says $1800). As a consequence, say defendants, this court should give complainant money damages by taking the value of the personal property in the

estate ($286.11), the sale price of the specifically devised realty ($2100) plus the estimated value of the residuary realty in 1942 ($1000 or $1800) and deduct from the aggregate the amount of the claims against the estate ($2505.08). The balance remaining, defendants contend, will represent the money which complainant would have received had the executor sold the real estate in the sequence required by the will.

The complainant stands firmly on the fact that the executor did not act in accordance with his authority and insists that the sale of the specifically devised realty should be held to be a nullity. Such a conclusion would doubtless be justified in the ordinary situation, but here the equities militate against such a conclusion.

Perhaps the compromise with the Old Age Welfare Commission's claim as it relates to this problem should be disposed of first. An admittedly valid claim for $1573.56 was filed with the executor by the Commission. The executor testified, and I accept his testimony, that he desired to save the residuary realty for James Cooper, the son of the testatrix, and in that way keep him off public relief. The property was saved by the sale of the specifically devised property, and by the compromise of the Commission's claim for 50%. Thus, the executor had sufficient money to pay all the debts of the estate without selling the residuary real estate.

Complainant would have the court use the compromise figure rather than the full amount of the Commission's claim in ascertaining the necessity for a sale by the executor of the specifically devised realty. I cannot agree with complainant. The testimony clearly indicates that the compromise was only accepted by the Commission in order to permit James Cooper to retain the residuary real estate, and thereby be kept off relief. The Commission would not, according to the testimony of its president, and probably could not have compromised the claim solely for the benefit of the

complainant. If we are to place ourselves in the position where the executor was first required to sell the residuary real estate, then we must, in determining the consequences thereof, use the amount of the claim which the Commission would have made under such circumstances.

I conclude that the full amount of the Commission's claim must be used in determining the necessity for selling the specifically devised real estate, and when such figure is used, it is undisputed that the executor would have been required to sell such real estate. This is so whether we accept complainant's or defendants' testimony as to the value of the residuary realty in 1942.

Since complainant's property would have been sold in any event, she is not substantially harmed by ascertaining the fair value of the residuary realty in 1942, and using that figure to compute the balance to which complainant is entitled.

Defendants introduced testimony which indicates that the residuary real estate was worth $1000 in 1942, while complainant introduced testimony showing that the properties were worth $1800 in 1942. I am more persuaded by the testimony of the defendants' witnesses with reference to the valuation in that they relied largely on the value of the properties at the time for dwelling purposes, while complainant's witnesses relied upon the potential commercial value of the properties. Certainly, the rental value and the condition of the properties in 1942 lend substantial support to the valuation placed on the properties by the defendants' witnesses. Moreover, an actual sale of a comparable property in the same general neighborhood, in the same general period of time, supports the valuation urged by the defendants. The commercial value placed on the properties was not justified in my opinion, either by the nature or the size of the properties involved.

I conclude from a consideration of all the evidence that

$1000 represented the fair market value of 910 and 918 Walnut Street during the period when the executor would and should have sold the residuary realty.

It clearly appears that there was no bad faith on the part of the executor in handling this matter as he did. He appears to have misconceived in good faith his powers under the will.

A recapitulation based on the foregoing conclusions is in order. The executor, had he complied with the will, would have had assets amounting to $3386.11 to pay debts aggregating $2505.08. For purposes of determining the amount complainant is entitled to receive, I have used the full amount of the Commission's claim because that is the sum the executor would have been required to pay had he disposed of the residuary realty first as required by the terms of the will. Had the executor complied with the terms of the will therefore, he would have had in his possession $881.03, which would have passed to the complainant pursuant to the provisions of the abatement clause in the will.

I have concluded that the facts of this case call for a denial of the complainant's prayer to remove a cloud on her title to the specifically devised real estate, but the granting of other relief under the general prayer for relief. However, the denial of complainant's prayer for specific relief and the affirmation of the actions of the defendants with respect to 934 Walnut Street are based on the condition that the executor, or some one or more of the other defendants, pay the complainant the sum of $881.03 with interest. A court of equity can refuse to grant the relief requested and in lieu thereof can grant some alternative relief, as I have done here. This principle is well recognized. Compare: *Buttinghausen v. Rappeport*, 131 *N.J.Eq.* 252, 24 *A.2d* 877. See also 1 *Pomeroy's Equity Jurisprudence*, (*5th Edition*) § 237*e*.

If the money damages are paid complainant within the time provided for in the decree, an appropriate notation of

286

such payment should appear at the foot of the decree. I will also hear counsel as to the date from which the interest should be calculated, but I consider that an allowance of an attorney's fee to the executor would be inappropriate here.

A decree accordingly will be advised.